THE GUARANTY TRUST AND SAFE DEPOSIT COMPANY, ET AL., APPELLANTS, VS. BUDDINGTON, WILSON & CO., ET AL., APPELLEES.

The institution of a suit in equity in the Circuit Court of the United States in this State, and a decree rendered therein upon the pleadings and testimony dismissing the bill, are not ground for dismissing an appeal taken subsequent to such decree to the Supreme Court of this State from a decree rendered in a Circuit Court of the State prior to the institution of the suit in the Federal court; nor ground for striking from the petition of appeal the grounds of appeal assigned by the appellant, who instituted the suit in the Federal court.

Appeal from the Circuit Court for Clay county.

Motion to strike from the petition of appeal the grounds assigned on behalf of the Guaranty Trust and Safe Deposit Company, and to dismiss the appeal as to said company.

The facts of the case are stated in the opinion.

*A. W. Cockrell & Son, Fleming & Daniel* and *C. P. & J. C. Cooper* for the motion.

*H. Bisbee, contra.*

MR. JUSTICE RANEY delivered the opinion of the court:

The decision of the motion to dismiss this appeal, disposed of at the last term, and reported in 2 Southern Reporter, p. 885, and 23 Fla., 514, was, as the minutes of the court will show, without prejudice to this motion.

The first ground of the present motion is explained by the following statement of facts made to appear by a transcript of portions of a record of proceedings in the United States Circuit Court.

The Guaranty Trust and Safe Deposit Company filed in the United States Court at Jacksonville, on the 20th day of November, 1886, after the sale and conveyance of the Green Cove Springs and Melrose Railroad, by the master in chancery, under the decrees of the State Circuit Court, a bill against the legal and beneficial purchasers or owners of the railroad at such sale, and the lessee of the same, assailing such sale by the master as void as to such Trust Company, on the alleged ground that the State court never obtained jurisdiction of the Trust Company by lawful service of process or otherwise. The bill alleges that certain first mortgage bonds of the railroad company are still

outstanding, and also assails the regularity of some proceedings in the State court, and asks for a decree declaring the sale and conveyance under the decree of the State court to be null and void as against the Trust Company and the *bona fide* holders of any of said bonds, and for a foreclosure of the deed of trust or mortgage and sale of railroad and other properties covered by the mortgage clear of all liens, and that the proceeds be applied to the payment of the bonds and coupons.

The defendants answered setting up as a defense the proceedings of the State Circuit Court, which court is averred to have obtained personal jurisdiction of the Trust Company, and also assailing the validity of the bonds sought to be enforced in the Federal court suit as legally outstanding or a valid claim against the railroad property.

Testimony was taken in the Federal court suit as to the validity of the bonds presented under the proceedings thereon, and subsequently on March 29th, 1887, the cause coming on to be heard upon the pleading and evidence, a decree dismissing the bill was entered.

After the entry of this decree, the appeal before us from the decrees of the State Circuit Court was entered on the 13th day of April, 1887, and on account of the proceedings in the Federal court we are asked to strike from the petition of appeal the several grounds of appeal, as well as to dismiss the appeal, in so far as the said Trust Company is concerned.

The doctrine upon which this motion is sought to be sustained is thus stated in the brief filed in support of the motion: " In a chancery cause the appellant will not be permitted, while *retaining* the benefits of the voluntary execution of a decree, to assign errors in reference thereto. "

" This principle is applied where the appellate court can *not* see that the *appellees* can be placed in *statu quo*."

24 SUPREME COURT.

Guaranty Trust, &c. Co., v. Buddington, &c.—Opinion of Court.

Garner vs. Prewitt, 32 Ala., 13, is cited in support of the doctrine. The principle advanced in that adjudication is thus stated in the third head-note: "In a chancery cause, the appellant will not be permitted, while retaining the benefits which he has derived from a voluntary execution of the decree, or any particular branch of it, to assign errors in reference to it, when the appellees cannot be placed in *statu quo*, and when the court cannot see that no injury will result to them; but in such case the court will strike out the assignment of error relating to that part of the decree which has thus been executed, or if the whole decree has been executed, dismiss the appeal."

"The settlement, and the consequent agreements make," it is said in the opinion, "a contract, in which the parties reciprocally received and granted benefits, and executed discharges. The discharge of the appellant from the balance against him, and the similiar discharge of John Prewitt, were elements of, and considerations moving to, the contract. For the purpose of that contract, and by that contract, the appellant treated the judgment of the register and the decree of the chancellor, in reference to the account, both against him and against John Prewitt, as subsisting, valid and real; and the fact that they were so treated, was a consideration of the contract. It cannot be known, and no court is authorized to pronounce, that, in the absence of such inducement, either of the appellees would ever have assented to the contract. If the balances ascertained had not been treated as subsisting dues, it can not be known that the appellees would have ever assented to the division of the assests which was made, or would have have taken the particular claims which they received, or permitted the appellant to take those which he received; or that Richard Prewitt would have consented to the dis-

JANUARY TERM, 1888.        25

Guaranty Trust, &c. Co., v. Buddington, &c.—Opinion of Court.

charge of the other appellee ; or that either of the appellees would have consented to the discharge of the appellant ; or that John Prewitt would have consented that the balance, ascertained against him, should enter into the settlement, and be treated as a valid and subsisting demand against him. It cannot be known that if the decree, so far as it pertains to the account against the appellant and the account against John Prewitt, should be reversed, no injury would result to the appellees. If they have obtained any advantage in the contract, they would lose it. John Prewitt may have been prevented by the settlement from contesting in this court his liability for the balance against him. Both the appellees may have been prevented from coming before this court with an agreement that the appellant was chargeable still farther than he was charged. The claims received by the respective parties may have proved valuable or worthless to an unequal extent."

The above quotation shows both the doctrine and real character of Garner vs. Prewitt ; and in Hoard vs. Hoard's Adm'r, 41 Ala., 590, the opinion of the majority of the court says of it, that " under the peculiar facts of the case we have no fault to find with the conclusion attained by the court therein."

In Tarleton vs. Goldthwaite, 23 Ala., 346, it was held that in chancery causes where the decree is *voluntarily* executed by the parties and the complainant receives the money decreed to him he may, nevertheless, prosecute an appeal. It is also remarked in Hoard vs. Hoard's Adm'r, after reviewing the several Alabama decisions bearing on the subject, as follows: " It will be perceived that not one among the various adjudications of this court, above cited, recognizes a *voluntary payment* merely as sufficient to bar the right of the party retaining the payment

to prosecute an appeal as to any matter out of which the payment grew."

In Hoard vs. Hoard's Adm'r, it was held that an appeal from an order of the probate court for the sale of a decedent's lands for division, and from a subsequent order confirming the sale, will not be dismissed at the instance of the administrator, because the infant heirs, appellants, have received the proceeds of the sale on final distribution of the decedent's estate, and have not offered to make restitution ; it being shown that the money was voluntarily paid by the purchaser and received by the administrator more than twelve months before it became due by the terms of the sale, and that payment was made in 1863 in Confederate States Treasury notes. In the opinion of the majority of the court it is said in effect that under these circumstances the *minor* appellants were not guilty of either vexation or oppression in prosecuting their appeal; and in a separate opinion filed by A. J. Walker, C. J., concurring in the refusal to dismiss, it is remarked that the principle upon which appellate tribunals refuse to entertain appeals, unless restitution is made, is strictly analagous to the chancery doctrine that he who asks equity must do equity.

Without questioning the correctness of the decision of Garner vs. Prewitt, considering its facts, or the doctrine really advanced by it, and regarding, with the consideration due to Judge Walker's high standing, what he says as to the principle underlying a refusal to entertain appeals, unless restitution is made, we are still altogether unable to see where there has been any voluntary performance by the Trust Company of any decree, or the acquisition by it, for either itself or any one else, of any benefits through the litigation in the Federal court.

It has acquired no benefits, and consequently cannot be

called upon to make restitution upon either the principle of doing equity or any other. It did not even go out of the Federal court *voluntarily*, but was dismissed therefrom against its will and without relief.

There is nothing in the case before us that bears any relation to the cases of Woodson vs. The State, 19 Fla., 549, or Smith vs. U. S., 94 U. S., 97, in which this court and the Supreme Court of the United States refused to consider writs of error of escaped convicts while at large. The Trust Company is not a fugitive from justice, but is here to abide our decision, whatever it may be. The only other case cited by counsel for the motion is Hall vs. Lacey, 37 Penn. St., 366, where it was held that a party suing out an execution and *enforcing* a judgment in his favor elects to take it as rendered, he cannot afterwards prosecute a writ of error. Of this case it is unnecessary to say more than that it is entirely different from the one before us.

If there is anything in the decrees of the State Circuit Court that obstructs or conflicts with the legal or equitable rights of the Trust Company, this court is a proper tribunal for the removal of the obstruction, and an appeal is the proper remedy. A subsequent suit in the same, or in another court, is not a bar to a former suit, nor to any proceedings in the same suit subsequent to the institution of the second suit. If the Trust Company has made a mistake in going into the Federal court, we do not think it should be charged with the infliction of, or an intent to inflict, oppression or vexation upon appellees, nor denies its rights here, whatever they may be. If, on the other hand, it has not made a mistake, but that court was, under the circumstances, a proper tribunal to adjudicate its alleged rights, and it has adjudicated them upon their merits, it

will have in the end to abide by such adjudication, subject to the review of the United States Supreme Court.

The motion is denied.