696 So.2d 794 (1997)
Albert Leon FLETCHER, Appellant,
v.
STATE of Florida, Appellee.
No. 94-03423.
District Court of Appeal of Florida, Second District.
February 14, 1997.
*795 James Marion Moorman, Public Defender, Bartow, and Brad Permar, Assistant Public Defender, Clearwater, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Angela D. McCravy, Assistant Attorney General, Tampa, for Appellee.
EN BANC

ON MOTION TO REINSTATE APPEAL
ALTENBERND, Judge.
Albert Leon Fletcher moves this court to reinstate his appeal. We deny his request.
In August 1994, a jury convicted Mr. Fletcher of grand theft and burglary of a dwelling while armed. The trial court sentenced him to seventeen years' imprisonment, in part because his prior record included two convictions for armed burglary and another for escape. He appealed to this court.
In February 1995, the public defender requested a sixty-day extension in which to file Mr. Fletcher's initial brief "due to excessive case load caused by inadequate funding." This court granted the motion and ordered the initial brief to be filed in early April 1995. The public defender filed no brief or motion for the next ten months. On January 9, 1996, this court issued an order compelling the public defender to file a brief within ten days. The public defender then filed Mr. Fletcher's brief.
A preliminary review of the brief suggests that Mr. Fletcher's appeal has no merit. The transcript reflects that the police found the stolen firearm in Mr. Fletcher's car, and he confessed this crime to a detective after receiving Miranda warnings. On appeal, he primarily argues that the trial court erred by striking a notice of alibi. The notice was not filed within the time permitted by Florida Rule of Criminal Procedure 3.200 and was not presented to the trial judge until after the jury had been sworn.
In response to Mr. Fletcher's brief, the state filed a motion to dismiss with a supporting affidavit, establishing that Mr. Fletcher had escaped on January 11, 1995, while being transported to the Pasco County Courthouse. As a result, this court dismissed the appeal in March 1996.
Six months later, on September 6, 1996, Mr. Fletcher's public defender filed a motion to reinstate this appeal, stating that his client "has been returned to custody and now wishes to have his appeal reinstated." The state's response explains that Mr. Fletcher was awaiting trial in another case for murder when he escaped, and that he was apprehended in Delaware in April 1996 after his escape was publicized on a television broadcast. We would normally deny such a motion to reinstate in an unpublished order relying on State v. Gurican, 576 So.2d 709 (Fla.1991), and Bretti v. Wainwright, 225 So.2d 516 (Fla.1969), modified, 255 So.2d 266 (Fla.1971). See generally William A. Haddad, Implied Waiver of the Right to Appeal, Fla. Bar J., Nov. 1991, at 21.
We publish our denial because of the disturbing argument presented by the assistant public defender. He suggests that Mr. Fletcher has not "thwarted the orderly effective administration of justice" because the "immense appellate backlog" renders his escape a harmless footnote in the process. He argues:
In simpler words, the current backlog renders most if not all criminal appeals "thwarted" and "frustrated" ab initio, as a matter of course, at least in terms of any practical benefits to an appellant sentenced to the eighteen months to two years it routinely takes to "prosecute" a typical appeal. In further words, it is fundamentally unfair to deny a motion to reinstate an appeal like this, on the grounds that that "escape" ostensibly thwarts and frustrates a system of appellate justice, where that system is already thwarted and frustrated, by a substantial backlog of cases that cannot be processed in a timely manner.
It is important for the public to understand that no "immense appellate backlog" exists in *796 this court. Even with our substantial case load, most appeals are processed well within acceptable time standards once the parties have filed their briefs. On the other hand, a backlog exists and has existed for years in the office of the Public Defender of the Tenth Judicial Circuit, which is responsible for handling appeals for indigent defendants throughout the Second District. As a result of that backlog, criminal appeals are often delayed for a period in excess of a year beyond the schedule delineated in the Florida Rules of Appellate Procedure.
This court has employed virtually every available tool to determine the causes of that backlog and to seek a solution. See, e.g., Order on Motions to Withdraw, 622 So.2d 2 (Fla. 2d DCA 1993), affirmed, 636 So.2d 18 (Fla.1994). Many believe that the legislature's chronic underfunding of the public defender's office has contributed significantly to this problem. We are unable to state with certainty, however, that underfunding is the sole cause leading to the backlog in the office of the Public Defender of the Tenth Judicial Circuit because that office appears to be the only appellate public defender in Florida with such a severe problem. Regardless of the causes, the public defender's office continues to fail to serve many of its clients in a timely fashion, and this court reluctantly relieves that office of its statutory obligations in many cases.[1] When we remove the Public Defender of the Tenth Judicial Circuit from a case, the cost of that appeal is frequently shifted to taxpayers in counties who have no right to vote for or against the person who holds the office of Public Defender in the Tenth Judicial Circuit. This surely is not the system contemplated by article V of the Florida Constitution, but it is the only system available to this court. Legislators from counties within the Second District should understand that if the state fails to fund adequately the constitutionally mandated statewide system of public defenders, their constituents probably pay a greater proportion of this burden through local taxation.
Mr. Fletcher escaped during the early stages of his appeal. The public defender spent time and resources on Mr. Fletcher's case long after his appeal would have been dismissed had we known of his escape. These resources should have been employed for the benefit of a prisoner lawfully awaiting the resolution of his or her appeal. If the public defender's backlog "thwarts and frustrates" appellate justice for its clients, Mr. Fletcher's conduct made this problem worse. Because public defender resources were used on his appeal, local taxpayers in some county of our district were required to pay for the appeal of a defendant who did not escape.
Admittedly, the public defender's office would cease to have a backlog if many of its clients successfully escaped. This court has been willing to consider a wide array of potential solutions to the public defender's backlog. Suffice it to say, escape is not among them.
Motion to reinstate denied.
THREADGILL, C.J., and DANAHY, CAMPBELL, FRANK, PARKER, PATTERSON, BLUE, LAZZARA, FULMER, QUINCE, WHATLEY and NORTHCUTT, JJ., concur.
SCHOONOVER, J., concurs in result only.
NOTES
[1] Since October 1995, this court has relieved the public defender's office of its statutory responsibilities in approximately 375 cases. As an estimate, this number represents about ten percent of that office's case load in this court.