KLEIN, J.
Appellant, who was angry about a sentence he had received, wrote letters threatening to kill the sentencing judge. As a result of the letters he was charged with violating section 836.10, Florida Statutes (1997). Appellant’s trial strategy to the charge of writing the letters was to contend that his prior record did not justify the habitual offender sentence he had previously received, and that was the reason he had written the letters. He was found guilty of making the threats and argues that the trial court erred in allowing in evidence the specific crimes on which the earlier habitual offender sentence was based. We affirm.
Appellant’s threatening letters were directed to Judge Alfred Horowitz who had previously presided over a trial against appellant in which he was charged with battery on a police officer, resisting arrest with violence, and other lesser charges. As a result of the convictions in that trial and appellant’s prior record, Judge Horowitz found appellant to be a habitual offender and sentenced him to ten years imprisonment.
Soon thereafter Judge Horowitz began to receive angry letters from appellant.
At first, he thought that the appellant was just venting anger, but as the letters continued and became more threatening, he referred them to the State Attorney’s office, and appellant was charged with threatening to kill or do bodily harm to Judge Horowitz in violation of section 836.10, Florida Statutes.[1]
At the beginning of the trial the state was aware that the defense was going to attack the severity of the habitual offender sentence in order to explain why appellant wrote the letters. In anticipation of this the state asked the court to allow Judge Horowitz to testify why the specific crimes for which appellant had been convicted warranted the habitual offender sentence.
Defense counsel responded that he did intend to question Judge Horowitz, who was a county judge occasionally sitting as a circuit judge, about the judge’s experience hearing felony cases. Defense counsel suggested that he wanted to inquire into this area because it may have been that appellant’s prior convictions appeared more serious to Judge Horowitz than they would have to a judge who was more experienced in felony cases.[2]
The court deferred ruling until he heard, out of the presence of the jury, what the nature of the judge’s testimony would be. During trial, before Judge Horowitz testified on direct examination as the state’s witness, it was proffered that he was “particularly mindful” of the fact that appellant had five prior felonies of which three were burglaries, one a grand theft, and the other cocaine possession. He said that burglary convictions “are crimes where there *497 is a substantial likelihood that somebody else can get hurt. And I take that into account very seriously. That weighs very heavily on my mind.” After hearing the proffer, the trial court allowed Judge Horowitz to testify as to the nature of appellant’s prior convictions.
Whether appellant should have been habitualized, based on his prior convictions, was within the discretion of the sentencing judge. State v. Hudson, 698 So.2d 831 (Fla.1997). Appellant’s defense strategy, which was to attempt to show, in cross-examination of Judge Horowitz, that the habitual offender sentence was not warranted, made defendant’s prior crimes very relevant to the issue of whether the sentence was warranted.
Even though evidence is relevant, it should still be excluded if “its probative value is substantially outweighed by the danger of unfair prejudice.” § 90.403, Florida Statutes. The relevancy in this case was not outweighed by the danger of unfair prejudice because appellant’s counsel acknowledged that the jury should know that the habitual offender sentence was based on three felony convictions. The danger of unfair prejudice, under these circumstances, considering that the most serious felony made known to the jury was burglary, was not so prejudicial as to outweigh the relevancy.
We therefore find no error in the trial court’s admitting into evidence the precise crimes for which appellant was convicted.[3] Nor was there any error in allowing this evidence in as part of the state’s case, as it was in anticipation of the trial strategy which defense counsel had indicated he was taking. Biondo v. State, 533 So.2d 910 (Fla. 2d DCA 1988).
We therefore affirm.
POLEN and HAZOURI, JJ., concur.

. Examples of statements contained in appellant’s letters are:
When I get out of prison I am going to buy a ... gun, I can get my hands on a gun and shoot your white ass down, cracker. I hope you be out of office because the only thing better than killing a judge is killing an ex-judge ...
[[Image here]]
I am going to kill that cracker when I get of jail. That is a ... promise. I promise I am going to try my best to hunt that judge down.
Since I can’t put you in prison like you did me I am going to put your ass six foot under just as soon as I get out and get to my block 9 and put the hole in your ... ass. I mean every word that I said.

. It was understood that the issue of whether appellant should have been habitualized was not a defense, but defense counsel was hoping that it would portray his client, who could not deny that he had written the letters, in a more favorable light to the jury.

. Our decision is, of course, limited to the facts.