856 So.2d 1074 (2003)
Rafael PEREZ, Appellant,
v.
STATE of Florida, Appellee.
No. 5D02-810.
District Court of Appeal of Florida, Fifth District.
October 17, 2003.
*1076 James B. Gibson, Public Defender, and Barbara C. Davis, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Timothy D. Wilson, Assistant Attorney General, Daytona Beach, for Appellee.
THOMPSON, J.
Rafael Perez appeals his convictions and sentence for trafficking, delivery, and possession of heroin and cocaine. We affirm.
After selling drugs to an undercover police officer, Perez was charged with trafficking of heroin; two counts of delivery of cocaine; two counts of possession of cocaine with intent to sell or deliver; and possession of heroin with intent to sell or deliver.
At trial, Officer Matthew Floeter testified that a reliable, confidential informant gave him Perez' phone number. Floeter testified that he called Perez while recording the conversation, and asked if Perez could get him "anything." After several more telephone calls recorded by Floeter, Perez met Floeter at a gas station and sold him cocaine. The transaction was videotaped. Floeter testified that he did not arrest Perez on that occasion because Perez stated that he could supply Floeter more cocaine. Floeter testified that Perez sold him cocaine and heroin on a second occasion, and he arrested Perez. Prior to the second drug transaction, Floeter and Perez engaged in numerous phone conversations recorded by Floeter. During Floeter's testimony, the audiotapes of his conversations with Perez and the videotapes of the drug transactions were played for the jury. Floeter was allowed to explain what was occurring on the videotapes.
Perez testified at trial and admitted that he did the things shown on the videotapes. Perez testified that he did those things because he was using heroin and cocaine, and he needed money. Perez testified that he received calls from a "David," who turned out to be Floeter, and that Floeter was insistent about purchasing drugs. Perez stated when Floeter was telephoning him about purchasing drugs, he was in fear for the lives of himself and his family because he owed money to his drug supplier.
Perez was found guilty of trafficking in heroin, 14 grams or more; trafficking in cocaine, 28 grams or more; two counts of delivery of cocaine; and two counts of possession of cocaine with intent to sell or deliver. Perez was found not guilty of delivery of heroin, but found guilty of the lesser included offense of possession of heroin.
On appeal, Perez contends that the trial court erred by allowing Floeter to supplement and explain the videotape. We do not agree. Floeter was allowed to explain only the visual images on the videotape, which is no different from testifying about the images depicted on a photograph. See Gulf Life Ins. Co. v. Stossel, 131 Fla. 127, 179 So. 163 (1938) (holding authenticated video is admitted under the same rule as photographs); see also Harris v. State, 755 So.2d 766 (Fla. 4th DCA 2000) ("Photographs are commonly used to explain the testimony of witnesses").
Perez also states that Floeter was able to explain what he believed was said during unintelligible portions of the videotape. After a review of the record, we find that Perez' statement is incorrect. The record shows that the trial court sustained the defense's objections when Floeter was *1077 asked what Perez was saying at points when the videotape was unintelligible. Furthermore, when the state asked Floeter why Perez sat behind Floeter in the back seat during a drug transaction, the trial court also sustained Perez' objections and required Floeter to testify without speculating about motives. We find no error in allowing Floeter to define "street" terminology and explain the visual images such as locations where drug transactions occurred with Perez and where Perez resided.
Next, Perez argues that it was error to allow the state to rebut Perez' entrapment defense by asking Perez about his prior conviction for possession of cannabis with intent to sell. Evidence of prior crimes is admissible because it is relevant to rebut the defense of entrapment by showing a predisposition to commit crimes of the type charged. Biondo v. State, 533 So.2d 910 (Fla. 2d DCA 1988). Sampson v. State, 645 So.2d 1005 (Fla. 2d DCA 1994) is instructive:
The absence of a defendant's predisposition to commit the offense is the essential element of an entrapment defense. Herrera v. State, 594 So.2d 275, 277 (Fla.1992); see also § 777.201, Fla. Stat. (1991) (entrapment creates a substantial risk that a crime "will be committed by a person other than one who is ready to commit it"). The accused must show he lacked predisposition. Munoz v. State, 629 So.2d 90 (Fla.1993). To rebut this essential element of the defense, "the prosecution may make `an appropriate and searching inquiry' into the conduct of the accused and present evidence of the accused's prior criminal history, even though such evidence is normally inadmissible." 629 So.2d at 99. Evidence about predisposition to commit a crime is only relevant in this limited circumstance where the defendant puts his lack of predisposition at issue. We decline to extend its relevancy to a situation where the defendant has not specifically raised the entrapment defense.
Id. at 1007. In the instant case, Perez specifically raised the entrapment defense, and therefore, the state was properly allowed to inquire into prior convictions tending to show that Perez was predisposed to illegally sell drugs. See Davis v. State, 804 So.2d 400 (Fla. 4th DCA 2001) (holding a critical element of entrapment is that the accused not have a predisposition to commit crimes, and one way for the state to prove a predisposition is to present evidence of prior criminal history).
Perez also contends that the trial court never conducted a Richardson[1] hearing about an alleged discovery violation. During cross examination of Perez, the state elicited his admission that in connection with his prior conviction for possession of cannabis with intent to sell, he told police in a sworn statement that he had sold marijuana only to older people and not to children. Defense counsel claimed that he knew about the conviction, but he was not aware of the statement. We find Perez' contention to be incorrect because the trial court conducted a Richardson hearing. After objecting to the alleged discovery violation, Perez' counsel requested a Richardson hearing. The state responded that the Richardson hearing would not take long, and the state explained that a different prosecutor had been assigned to the cannabis case and that Perez had a different defense attorney. The prosecutor explained that she did not learn until the day before that Perez had been convicted of the cannabis possession charge. The trial court responded that Perez was aware of the statements because he had entered a *1078 plea in the case and overruled the objection.
Perez further argues that the trial court should have granted his motion for mistrial based on the discovery violation. Assuming for the sake of argument that there was a discovery violation, we find that the trial court did not abuse its discretion when it denied Perez' motion for mistrial. See Cox v. State, 819 So.2d 705, 712 (Fla.2002) (holding a trial court's decision regarding a motion for mistrial pursuant to a Richardson hearing is subject to reversal only upon a showing that it abused its discretion). Where the state has committed a discovery violation, the standard for deeming the violation harmless is extraordinarily high. Id. In determining whether a Richardson violation is harmless, it must be determined whether there is a reasonable possibility that the discovery violation procedurally prejudiced the defense. State v. Schopp, 653 So.2d 1016, 1020 (Fla.1995). In the instant case, we conclude that the alleged discovery violation did not prejudice Perez' defense. Perez' prior conviction for possession of cannabis with intent to sell was properly allowed in rebuttal to Perez' entrapment defense, and the jury was aware of Perez' conviction. The inclusion of Perez' statement that he sold marijuana only to older people was cumulative and harmless.
Next, Perez argues that the trial court erred by denying his motion for judgment of acquittal on the heroin trafficking charge. An FDLE crime lab analyst testified that she tested three packages of heroin which weighed 5.1 grams, 4.7 grams, and 7.9 grams respectively. Perez sold Floeter the package weighing 5.1 grams. The 7.9 grams of heroin was located in Perez' pocket, and a package containing 4.7 grams of heroin was located in the Ford Explorer Perez drove. Disregarding the heroin located in the Ford Explorer, Perez was in possession of 13 grams of heroin. Perez contends that he did not possess the required amount of heroin, 14 grams or more, required for a conviction under section 893.135(1)(c)b, Florida Statutes, because he was not in possession of the heroin located in the vehicle he drove. Perez states that the vehicle he drove the day he was arrested was his wife's vehicle, and because the heroin was not found on his person, he was not in actual or constructive possession of the heroin in the car.
A trial court's denial of a motion for judgment of acquittal will not be reversed if it is supported by competent, substantial evidence. Crump v. State, 622 So.2d 963 (Fla.1993). Perez testified that he was in possession of heroin on the day he was arrested. He confirmed that it was his voice on the audiotapes and that he told Floeter that he had picked up heroin and he was going take it real easy driving because he was "loaded." Perez also stated on the audiotapes, "I'm in my Ford Explorer." (emphasis added). Perez admitted selling heroin to Floeter and more heroin was found in Perez' pocket. Given the totality of the circumstances, there was enough evidence to attribute the heroin located in the Ford Explorer to Perez. See Chambers v. State, 700 So.2d 68 (Fla. 5th DCA 1997) (where cocaine was found at defendant's foot, $2,000 cash was found on his person, and he had keys to a vehicle that was registered in his mother's name, given totality of circumstances, evidence was sufficient to link cocaine in vehicle to defendant).
Finally, Perez contends that the trial court erred when it denied a motion for mistrial after the state asked Perez whether he had discussed defenses with attorneys. A trial court's decision whether to give a curative instruction or grant a mistrial is subject to an abuse of discretion standard. Cedno v. State, 545 So.2d 495 (Fla. 3d DCA 1989). A motion *1079 for mistrial is the sound discretion of the trial judge and should only be granted in cases of absolute necessity. Salvatore v. State, 366 So.2d 745 (Fla.1978). In other words, "a mistrial should be granted only in circumstances where `the error committed was so prejudicial as to vitiate the entire trial.'" Kivett v. State, 629 So.2d 249 (Fla. 3d DCA 1993) (quoting Duest v. State, 462 So.2d 446, 448 (Fla.1985)).
In the instant case, the state started to ask Perez if he spoke with attorneys about a possible defense, but the defense objected. Perez did not answer the question, and the trial court told the state not to inquire any further and instructed the jury to disregard the question. Given the weight of the evidence and the fact that Perez admitted to selling drugs, the partially asked question was not so prejudicial as to vitiate the entire trial. See Joseph v. State, 704 So.2d 1149, 1149 (Fla. 3d DCA 1998) ("strong curative instruction promptly given by the trial court alleviated any possible prejudice, thus trial court correctly denied the mistrial motion").
AFFIRMED.
PALMER and TORPY, JJ., concur.
NOTES
[1] Richardson v. State, 246 So.2d 771 (Fla. 1971).